George J. **MURPHY** and The Business Men's League of the United States, Petitioners,

v.

**UNITED STATES** of America and Federal Communications Commission, Respondents.

Illinois Bell Telephone Company, Intervenor.

No. 12067.

United States Court of Appeals Seventh Circuit.

Feb. 17, 1958.

Harry R. Booth, Chicago, Ill., for petitioner.

Gordon W. Winks, Leslie N. Jones, Chicago, Ill., for Illinois Bell Tel. Co., intervenor.

Warren E. Baker, Gen. Counsel, F. C. C., Washington, D. C., Victor R. Hansen, Asst. Atty. Gen., Daniel M. Friedman, Atty., Dept. of Justice, Richard A. Solomon, Asst. Gen. Counsel, John J. O'Malley, Jr., Counsel, F. C. C., Washington, D. C., for respondents.

Before DUFFY, Chief Judge, and MAJOR and HASTINGS, Circuit Judges.

MAJOR, Circuit Judge.

On November 13, 1956, Illinois Bell Telephone Company (hereafter "Bell") applied to the Federal Communications Commission (hereafter "Commission") for a certificate, under Section 221(a) of the Communications Act (47 U.S.C.A. § 221(a)), that Bell's proposed acquisition of Manhattan Telephone Company (hereafter "Manhattan"), of Manhattan, Illinois, would be of advantage to the persons to whom service was to be rendered and in the public interest. The Bell application was accompanied by numerous exhibits, including the financial background of both companies, a contract of sale between Manhattan and Bell and a certificate of convenience and necessity issued by the Illinois Commerce Commission which, after hearing, had approved the acquisition. Manhattan had a total of eight employees, served

approximately 615 subscribers, and the proposed purchase price for its properties was $64,100.

Section 221(a), so far as here material, provides:

> "Upon application of one or more telephone companies for authority * * * to acquire the whole or any part of the property of another telephone company * * * the Commission shall give reasonable notice in writing to the governor of each of the States in which the physical property affected, or any part thereof, is situated, and to the State commission having jurisdiction over telephone companies, and to such other persons as it may deem advisable, and shall afford such parties a reasonable opportunity *to submit comments on the proposal. A public hearing* shall be held in all cases where a request therefor is made by a telephone company, an association of telephone companies, a State commission, or local governmental authority. If the Commission finds that the proposed * * * acquisition * * * will be of advantage to the persons to whom service is to be rendered and in the public interest, *it shall certify to that effect; and thereupon any Act or Acts of Congress making the proposed transaction unlawful shall not apply."* (Italics supplied.)

Pursuant to this provision, public notice of the application was given by placing a poster in a conspicuous location in Manhattan's office, from November 16 to December 17, 1956. In addition, a newspaper notice, as required by Commission rules, was published twice in the Joliet Herald-News, a newspaper having a general circulation in Manhattan, Illinois. No communication or objection of any kind was received from or made by any of the persons or entities mentioned in Section 221(a), other than from the Illinois Commerce Commission (the State commission having jurisdiction over telephone companies) which, as already noted, approved the acquisition.

It should be particularly noted that no objection was made by any of Manhattan's subscribers.

The Commission granted the Bell application on January 7, 1957 (nearly nine weeks after its receipt), with a finding that it "will be of advantage to the persons to whom service is to be rendered and in the public interest." Two days after the grant the Commission received a letter from counsel for petitioner George J. Murphy, a Bell subscriber in Chicago, protesting the acquisition of Manhattan by Bell on the ground that it "raises serious questions under the anti-trust laws" and that it "is contrary to the public interest." A hearing was requested. On January 10, 1957, the Commission wrote petitioner's counsel explaining the procedure which it had followed and called attention to the fact that its order was entered in the absence of any objections to the proposed acquisition.

On January 30, 1957, a petition for rehearing of the grant of the Bell application was filed with the Commission by Murphy and the Business Men's League of the United States. The petition contained no allegation concerning the standing or status of the organization other than that it was a not-for-profit corporation organized under the laws of Illinois to encourage and aid small business. Bell intervened and filed its opposition to the petition for rehearing. On April 18, 1957, the Commission entered its Memorandum Opinion and Order which contained numerous subsidiary findings, with a renewal of its previous finding that the acquisition of Manhattan's plant and properties by Bell would be of advantage to persons to whom services would be rendered and in the public interest.

Section 405 of the Communications Act (47 U.S.C.A. § 405) extends the right to file petitions for rehearing only to a "person aggrieved or whose interests are adversely affected thereby." The Commission dismissed the petition as to the League on the ground that there was no showing that it was ag-

grieved or adversely affected in any way by the acquisition order. The Commission denied the petition as to Murphy on the·basis that his interest in the acquisition as a Chicago subscriber of Bell was too remote and unsubstantial and that in any event the petition was without merit.

The matter is now before this court on a petition for review of the orders of the Commission of January 7 and April 18, 1957, the former granting the Bell application and the latter denying and dismissing the petition for rehearing. It is alleged here for the first time that "the League is a telephone user of Illinois Bell service, represents the interests of its members, all of whom are engaged in business, and are generally subscribers of Illinois Bell." The right to review is predicated, so the petition alleges, on the provisions of Title 5 U.S.C.A. Chap. 19–A. Section 1032 of that chapter provides:

> "The court of appeals shall have exclusive jurisdiction to enjoin, set aside, suspend * * * or to determine the validity of, all final orders (a) of the Federal Communications Commission made reviewable in accordance with the provisions of section 402(a) of Title 47 * * *."

Section 1034 of the same chapter provides:

> "Any party aggrieved by a final order reviewable under this chapter may, within sixty days after entry of such order, file in the court of appeals * * * a petition to review such order."

Section 402(a) of Title 47, referred to in Section 1032 of Chapter 19–A, provides for review of a Commission's order

> "(6) By any other person who is aggrieved or whose interests are adversely affected by any order of the Commission granting or denying any application * * *."

Prior to a discussion of any of the issues raised by petitioners, it is perti-nent to note that respondents, on July 11, 1957, filed in this court their motion to dismiss the petition for review on the ground that petitioners are not aggrieved by the orders sought to be reviewed. This court, on July 31, 1957, denied the motion to dismiss, without prejudice to its renewal at the hearing on the merits. The motion has now been renewed, and we conclude it should be allowed.

The procedure to be followed by the Commission on the application of a telephone company for the acquirement of the property of another is plainly set forth in Section 221(a) of Title 47 (heretofore quoted). It provides that those to whom the Commission is required to give notice of such application shall be afforded "a reasonable opportunity to submit comments on the proposal." A hearing is required only "where a request therefor is made by a telephone company, an association of telephone companies, a State commission, or local governmental authority." As already noted, the Commission gave adequate notice of the pendency of the application and neither petitioners nor any other person or entity submitted comments on the proposal or made request for a public hearing. It was in this environment that the Commission entered its order of January 7, 1957, with a finding which met the statutory requirement that the acquisition "will be of advantage to the persons to whom service is to be rendered and in the public interest." Assuming contrary to what we think, that petitioners were entitled to a hearing, they, as all other interested parties, were required to make a request to the Commission in apt time. However, no formal request was filed with the Commission by petitioners until January 30, 1957 (23 days after the entry of the original order), when petitioners filed what they characterized as a petition for rehearing.

■■■ By express statutory provision, petitioners' right to a rehearing before the Commission as well as their right to review before this court was and

is dependent upon a showing that they were "aggrieved or their interests adversely affected" by the Commission's order. The attempted showing here on petition for review is the same as that made in the petition for rehearing except it is additionally alleged here as to the League that it is "a telephone user of Illinois Bell service, represents the interests of its members, all of whom are engaged in business, and are generally subscribers of Illinois Bell." It is at once apparent that the Commission properly dismissed the petition as to the League because there was no showing that it was aggrieved or adversely affected and no facts alleged upon which such a conclusion could have been made. It was not even alleged in the petition before the Commission that the League or its members, whosoever they might have been, were telephone subscribers or users.

The right of Murphy before the Commission, as well as that of both petitioners before this court, depends upon whether Murphy, an individual telephone subscriber in the City of Chicago, and the League, a representative of persons "generally subscribers of Illinois Bell," are persons "aggrieved or their interests adversely affected." Petitioners' principal contention in support of their right to review is based upon the allegation that the purchase price which Bell agreed to pay for the Manhattan properties was excessive in the amount of $41,000, and that such excessive purchase price would place an unfair burden upon petitioner Murphy and upon all customers of Bell using its telephone service. It is stated in their brief, "The petitioners here have a direct pecuniary interest as telephone subscribers in securing service at the lowest possible reasonable telephone rates." The Commission disputes the assertion that the price was excessive. The dispute on this score is due to the contention advanced by petitioners that the Commission used an erroneous formula in determining the value of Manhattan's properties. As it relates to the question under discussion,

we need not resolve this dispute. We assume for our present purpose that the price was excessive, as asserted by petitioners.

The record before the Commission discloses that Bell as of about the time the Commission's order was entered had more than one hundred million telephone users, each of whom apparently would be as much affected as petitioners. More than that, Bell had an unappropriated earned surplus of nearly fifty-eight million dollars. The alleged overpayment, therefore, would amount to seven-one-hundredths of one percent (.07%) of such surplus. Respondents assert, reasonably we think, that if the Commission were to allow Bell to add this to its rate base there is no way in which this apparently infinitesimal amount can possibly affect Bell's rates. More than that, as the Commission points out, there is no reason to believe that if any excessive payment in fact existed it would be added to Bell's rate base. In any event, whether the amount will ever be included in Bell's rate base is a matter for future determination by the Commission. It is clear, so we think, that the mere allegation that petitioners are telephone subscribers of Bell furnishes no basis for the contention that they and other subscribers will be required to pay an increased rate. Petitioners' assertion to the contrary is little more than a figment of the imagination.

This court, in In re Michigan-Ohio Bldg. Corp., 7 Cir., 117 F.2d 191, 193, in dismissing an appeal because there was no showing that appellants were aggrieved by the order under attack, stated:

"Generally accepted is the legal tenet that no one may appeal from a judgment unless he has an interest therein, direct, immediate, pecuniary and substantial. Speaking more specifically, a party has an appealable interest only when his property may be diminished, his burdens increased or his rights detrimentally affected by the order sought to be reviewed. * * * Furthermore the

right invaded or the injury sustained must be subsisting and immediate, not one arising as some possible, remote, unforeseen consequence. [Citing cases.]"

This case was subsequently cited by this court with approval in In the Matter of V–I–D, Inc., 7 Cir., 226 F.2d 113, 115, and in De Korwin v. First National Bank of Chicago, 7 Cir., 235 F.2d 156, 158. In Ex parte Levitt, 302 U.S. 633, 634, 58 S.Ct. 1, 82 L.Ed. 493, the court stated:

"It is an established principle that to entitle a private individual to invoke the judicial power to determine the validity of executive or legislative action he must show that he has sustained, or is immediately in danger of sustaining, a direct injury as the result of that action and it is not sufficient that he has merely a general interest common to all members of the public. [Citing cases.]"

Petitioners claim standing "as representatives of the public interest" to protect "the failure of the Commission to enforce the national policy" concerning monopoly. It is urged that they are entitled to a hearing on their contention that the acquisition of Manhattan by Bell is violative of the anti-trust laws. In our view, petitioners, having no standing in their own right to attack the order of the Commission, are by the same token without right to appear as representatives of the public. To hold that every Tom, Dick and Harry can attack the Commission's order would be to render meaningless Section 402(a) of Title 47 which limits the right of review to a "person who is aggrieved or whose interests are adversely affected." If petitioners have a right to attack the Commission's order as representatives of the public, all other subscribers of Bell would have the same right. Such a situation was obviously never intended by Congress and, if countenanced by the courts, would result in intolerable delay and confusion. See Frothingham v. Mellon, 262 U.S. 447, 487, 43 S.Ct. 597, 67 L.Ed. 1078. More than that, Sec. 221(a) (here-

tofore quoted), upon which the Commission proceeded in the instant matter, as a sequence to the Commission's certification that the acquisition will be in the public interest, provides, "and thereupon any Act or Acts of Congress making the proposed transaction unlawful shall not apply." While we are aware of no case construing this exception, it apparently makes an acquisition order by the Commission immune from the anti-trust laws.

Petitioners also argue on behalf of the public that the Commission failed to give proper consideration to the availability of the REA loan program for rural telephone expansion provided for by Congress in 1949. Title 7 U.S.C.A. § 921 et seq. The contention appears to be that Congress by this Act has made it possible for telephone subscribers in small towns and rural areas such as served by Manhattan to secure more economical service at lower rates than they can procure from Bell. The Commission stated that it was unable to determine that there was any relationship between the REA Act and the acquisition statute under which it was proceeding. We think that is a proper determination. Moreover, it is not discernible how this issue is of any concern or business of petitioners or of Bell's telephone users generally. It would seem that this issue would be of interest only to Manhattan and its subscribers. Even assuming that Manhattan could comply with the requirements of REA (the record indicates strongly to the contrary) and obtain a loan, we think it would be a matter calling for the exercise of judgment on the part of Manhattan's officials as to whether it would pursue that course and continue in business or sell its properties to Bell. It is not discernible how any person other than a subscriber of Manhattan would be interested in the exercise of such judgment. The fact that not a single Manhattan subscriber complained is a strong indication not only that they are satisfied with the acquisition by Bell but that they welcome the opportunity to receive the improved service which Bell can furnish.

For the reasons stated, it is our conclusion that petitioners are not entitled to a review of the Commission's order. The petition for review is, therefore, dismissed.